12-04-00082-CV







                                                                                    NO. 12-04-00082-CV
 
IN THE COURT OF APPEALS

TWELFTH COURT OF APPEALS DISTRICT

TYLER, TEXAS
ANNIE FAYE WATTS,                                     §     APPEAL FROM THE 145TH
APPELLANT

V.                                                                         §     JUDICIAL DISTRICT COURT OF

PILGRIM’S PRIDE CORPORATION,
APPELLEE                                                        §     NACOGDOCHES COUNTY, TEXAS
                                                                                                                                                            
MEMORANDUM OPINION
            Appellant Annie Faye Watts appeals the trial court’s summary judgment in favor of Appellee
Pilgrim’s Pride Corporation (“PPC”). In one issue, Watts claims the trial court erred in granting
summary judgment. We reverse and remand. 
 
Background
            On September 6, 2001, Watts, an employee of PPC, fell into a drain sump at PPC’s
Nacogdoches chicken processing plant and suffered injuries compensable under the Texas Workers’
Compensation Act (“the Act”). PPC, a nonsubscriber to the Act, paid Watts for medical expenses
and lost wages under an employee benefits program. After accepting these payments, Watts then
brought a negligence suit against PPC to recover personal injury damages.
            PPC filed a motion for summary judgment asserting that it was entitled to summary
judgment based upon four affirmative defenses B waiver, ratification, election of remedies, and
quasi-estoppel.


 To its motion, PPC attached several documents as summary judgment evidence B
a Partner Protection Plan Agreement signed by PPC and Watts (the “waiver”), an affidavit from
Stephanie Hancock (a workers’ compensation risk management analyst for PPC), a report from PPC
listing the amounts paid to Watts or on Watts’s behalf based on her slip and fall injury, and a copy
of several pages taken from Watts’s deposition. The waiver stated, in relevant part, 
 
If I have indicated below that I chose “Premium Benefits” under the Plan, then I understand that I
release and forever waive my rights under all statutes and common law to bring a lawsuit or other
action against my Employer . . . , for any damages relating to any injury that may occur in the course
of my employment by the Employer. I agree that this waiver and release will apply even where the
only cause of any such injury is an act of negligence and/or negligent failure to act by my
Employer . . . . My only remedy will be the Premium Benefits that I am eligible to receive under the
Plan. 


            Watts filed a response to PPC=s motion for summary judgment. In her response, Watts
objected to the third and fourth paragraphs of Hancock=s affidavit in which Hancock stated that
Watts was given the opportunity to read and review the waiver prior to signing, was made fully
aware of her rights under the plan (specifically that she would be giving up her right to sue in return
for taking the “Premium Benefits” under the Plan), and freely chose to accept the “Premium
Benefits.” Watts argued these were legal conclusions that Hancock was not qualified to express
because she was not present when Watts signed the waiver.
            Watts also attached her personal affidavit in which she made several statements that she
contended raised genuine issues of material fact regarding PPC’s affirmative defense of waiver.
Specifically, Watts stated in her affidavit that “[w]hen I got hurt, I reported my injury and signed
another form, but nobody told me I had to decide about what kind of benefits I wanted, or that if I
chose ‘premium benefits’ I would be giving up all my other legal rights.” Further, Watts attested
that she signed the waiver, but did not check the box electing “premium benefits” or ask anyone to
check the box on her behalf. She said she specifically told PPC’s agent that she did not want to
participate in any of the benefit programs. Watts also said in her affidavit that PPC’s agent did not
tell her she had to choose one plan or the other or that if she chose the “premium” plan, she would
be giving up all legal rights to file suit against PPC. Watts claimed that no one ever explained the
benefit plan to her and that at no time was she aware that she was enrolled in a plan whereby she
gave up any claims she might have against PPC. 
            Watts further asserted in her response that the waiver was not enforceable as a contract and
that the waiver did not meet the fair notice conspicuousness test. Watts referred to the portion of
her deposition where she stated that she believed PPC had paid her medical bills “[b]ecause my
accident happened on their premises. They were supposed to have been paying for it.” She also
alleged that she made a claim for payment of her medical expenses under another group health
insurance plan provided through her spouse’s employer, which was inconsistent with PPC’s
assertion that she made an informed intentional election of remedies.
            Watts also contended that the statements in her affidavit raised a genuine issue of material
fact as to ratification and estoppel because knowledge is a necessary element of both. Finally, Watts
asserted that PPC’s motion for summary judgment failed to address the unconscionability element
of quasi-estoppel; therefore, quasi-estoppel could not form the basis for a summary judgment in its
favor. 
            The trial court granted summary judgment in favor of PPC. This appeal followed.
 
Summary Judgment
            In her sole issue, Watts challenges the granting of PPC=s motion for summary judgment.
Review of Summary Judgments
            Texas uses summary judgments merely Ato eliminate patently unmeritorious claims and
untenable defenses.@ Casso v. Brand, 776 S.W.2d 551, 556 (Tex. 1989). A summary judgment is
not entitled to the same deference given a judgment following a trial on the merits. See Kelly v. Rio
Grande Computerland Group, 128 S.W.3d 759, 766 (Tex. App.BEl Paso 2004, no pet.). When
reviewing the granting of a motion for summary judgment, an appellate court does not view the
evidence in the light most favorable to the trial court=s judgment; rather, it must indulge every
reasonable inference in favor of the nonmovant. Nixon v. Mr. Prop. Mgmt. Co., Inc., 690 S.W.2d
546, 548-49 (Tex. 1985). The question is not whether the nonmovant raised a material fact issue
to defeat the motion, but whether the movant has proved entitlement to judgment as a matter of law. 
Gibbs v. Gen. Motors Corp., 450 S.W.2d 827, 828-29 (Tex. 1970). If the movant fails to meet its
burden, the appellate court must reverse and remand the case for further proceedings. Id. The
appropriate standard of review for summary judgment has been clearly set forth by the Texas
Supreme Court:
 
              (1)         The movant for summary judgment has the burden of showing that there is no
genuine issue of material fact and that it is entitled to judgment as a matter of law;
 
              (2)         Evidence favorable to the nonmovant will be taken as true in deciding whether there
is a disputed material fact issue precluding summary judgment; and
 
              (3)         Every reasonable inference must be indulged in favor of the nonmovant and any
doubts resolved in its favor.


See Nixon, 690 S.W.2d at 548-49.
            Where, as here, a defendant moves for summary judgment based on an affirmative defense,
it is that party’s burden to plead and to prove conclusively all elements of the affirmative defense
as a matter of law. Montgomery v. Kennedy, 669 S.W.2d 309, 310-11 (Tex. 1984). Unless the
movant proves its affirmative defense conclusively, the nonmovant has no burden in response to a
motion for summary judgment based on an affirmative defense. Torres v. Western Cas. & Sur. Co.,
457 S.W.2d 50, 52 (Tex. 1970). 
When a summary judgment order fails to specify the ground upon which the ruling was
made, as in this case, we must affirm the judgment if any one of the theories advanced in the motion
are meritorious. See State Farm Fire & Cas. Co. v. S.S., 858 S.W.2d 374, 380 (Tex. 1993). 
Because the granting of a summary judgment is a question of law, we review the trial court’s order
de novo. See Natividad v. Alexsis, Inc., 875 S.W.2d 695, 699 (Tex. 1994). 
Applicable Law and Analysis
The Signed Waiver
            In 2001, the Texas Legislature amended section 406.033 of the Texas Labor Code to provide
that any agreement by an employee to waive a cause of action against a nonsubscribing employer
for an injury sustained in the course and scope of employment is void and unenforceable if the
agreement was made before the employee sustained the injury. Tex. Lab. Code Ann. § 406.033
(Vernon 2004). The amendment was in response to the Texas Supreme Court’s decision in
Lawrence v. CDB Services, Inc., 44 S.W.3d 544 (Tex. 2001), which held that agreements
containing such waivers are not prohibited by law. Id. at 554. In 2004, the Texas Supreme Court
determined that the 2001 amendment is not to be applied retroactively to an agreement signed by
an employee before the amendment if the employee was also injured before the effective date of the
amendment. See Storage & Processors, Inc. v. Reyes, 134 S.W.3d 190, 192 (Tex. 2004). 
            In the instant case, Watts signed the waiver on September 14, 2000, before the Labor Code
was amended. However, she was injured on September 6, 2001, which was after the effective date
of the amendment. Therefore, this case is distinguishable from Reyes. Because PPC seeks to
enforce a waiver signed before the effective date of the amendment and Watts was injured after the
effective date of the amendment, we conclude that the waiver was void and unenforceable. See
Tex. Lab. Code Ann. § 406.033; Reyes, 134 S.W.3d at 192; Villareal v. Steve’s and Sons Doors,
Inc., 139 S.W.3d 352, 354 (Tex. App.–San Antonio 2004, no pet.) (concluding waiver provision 
was void and unenforceable because employee’s injury was after the effective date of the
amendment although employee signed waiver prior to the effective date of the amendment).
            Affirmative Defenses
            PPC asserts that (1) Watts’s claims are waived since, prior to the enactment of the Labor
Code amendment, Watts signed a waiver of her right to sue in exchange for benefits under a partner
protection plan agreement, (2) Watts is prevented from recovering in her negligence suit because
of the election of remedies doctrine, (3) Watts ratified the waiver by accepting the benefits under
the plan, and (4) Watts is prevented under the theory of quasi-estoppel from accepting the benefits
of a transaction and then subsequently taking an inconsistent position.
            “A contract to do a thing which cannot be performed without violation of the law” violates
public policy and is void. See In re Kasschau, 11 S.W.3d 305, 312 (Tex. App.–Houston 1999, no
pet.) (citing Lewis v. Davis, 145 Tex. 468, 471, 199 S.W.2d 146, 148-49 (1947)); see also
Montgomery v. Browder, 930 S.W.2d 772, 778 (Tex. App.–Amarillo 1996, writ denied). Therefore,
the waiver of Watts’s right to sue PPC for negligence is void and unenforceable. A void contract
is no contract at all; it binds no one and is a mere nullity. See Seafarers’ Welfare Plan v. George
E. Light Boat Storage, Inc., 402 S.W.2d 231, 234 (Tex. App–Houston [1st Dist.] 1966, writ ref’d,
n.r.e.). No disaffirmance is required to avoid a void contract, and one cannot be validated simply
because its enforcement would render a desired result. Id. A void agreement has no legal effect and
cannot be rendered enforceable by other means, such as waiver, quasi-estoppel, or ratification. See
In re Calderon, 96 S.W.3d 711, 720 (Tex. App.–Tyler 2003, orig. proceeding [mand. denied]) (void
agreement cannot be rendered enforceable by waiver or estoppel); see also Harris v. Archer, 134
S.W.3d 411, 427 (Tex. App.–Amarillo 2004, pet. denied) (void agreement cannot be ratified). The
doctrine of election of remedies bars relief when a party successfully exercises an informed choice
between two or more remedies that are so inconsistent as to constitute manifest injustice. 
Bocanegra v. Aetna Life Ins. Co., 605 S.W.2d 848, 850-52 (Tex. 1980). Election of remedies,
waiver, quasi-estoppel, and ratification are each affirmative defenses used to bar relief to prevent
unjust enrichment when a party knowingly chooses a remedy. Therefore, as with waiver,
ratification, and quasi-estoppel, we conclude that election of remedies cannot render a void contract
enforceable. 
            Even if life could be breathed into a void contract, PPC was required to establish each
element of its affirmative defenses as a matter of law. See Montgomery, 669 S.W.2d at 310-11. To
establish election of remedies as an affirmative defense, PPC was required to show that Watts made
an informed choice between two or more remedies. To do this, PPC attached an affidavit from
Stephanie Hancock, a workers’ compensation risk management analyst.
            In relevant part, Hancock attested in her affidavit that Watts was “fully aware of [] her rights
under the Plan, and specifically [] aware that she would be giving up [her] right to sue in return for
taking the ‘Premium Benefits’ under the Plan.” Hancock also stated that Watts “freely chose to
accept the ‘Premium Benefits’ under the Plan.” Watts objected to Hancock’s affidavit because
Hancock attested to statements to which she (Hancock) had no personal knowledge. 
            A bare, self-serving statement that the affiant has personal knowledge of the facts will not
suffice. Coleman v. United Sav. Ass’n of Tex., 846 S.W.2d 128, 131 (Tex. App.–Fort Worth 1993,
no writ). Instead, the affidavit must affirmatively show “how the affiant became personally familiar
with the facts so as to be able to testify as a witness.” Id. Affidavits that do not meet the
requirements of Rule 166a will neither sustain nor preclude a summary judgment and are not
competent summary judgment evidence. Tex. R. Civ. P.166a; Box v. Bates, 162 Tex. 184, 187-88,
346 S.W.2d 317, 319-20 (Tex. 1961). From the record, it appears that Sylvia Aldana was the
representative for PPC who signed the waiver on September 14, 2000. PPC provided no evidence
that Hancock was present during the meeting between Aldana and Watts. Viewing Hancock’s
affidavit in the light most favorable to Watts, we conclude that it does not meet the Rule 166a
requirements and therefore the trial court could not consider it. Without Hancock’s affidavit, PPC
failed to provide competent evidence that Watts made an informed choice. Furthermore, courts have
held that an employee’s acceptance of payments from his employer, without more, does not
constitute an election of remedies barring the employee’s action for common law damages. See
Ferguson v. Hosp. Corp. Intern, Ltd., 769 F.2d 268, 274-75 (5th Cir. 1985); Grimes v. Jalco, Inc.,
630 S.W.2d 282, 285 (Tex. App.–Houston [1st Dist.] 1981, writ ref’d n.r.e.). Thus, we conclude the
trial court erred in granting summary judgment. Accordingly, we sustain Watts’s sole issue.
 
Disposition
            Having sustained Watts’s sole issue, we reverse the trial court’s judgment and remand the
cause to the trial court for further proceedings consistent with this opinion.
 
 
 
                                                                                                    DIANE DEVASTO 
                                                                                                                 Justice
 
 
 
Opinion delivered September 30, 2005.
Panel consisted of Worthen, C.J., Griffith, J., and DeVasto, J.



















(PUBLISH)